UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFFERY B.,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. 3:18-cv-05778-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be reversed, and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance and supplemental security benefits on March 25, 2014. Dkt. 6, Administrative Record (AR) 10, 240-248, 249-255. Plaintiff alleges that he became disabled on December 8, 2011. AR 10, 50, 240, 249. Plaintiff's applications were denied initially and on reconsideration. AR 140-142, 143-146, 149-150, 151-152. After a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision on December 7, 2017, AR 7-28, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-6. Plaintiff appealed to this Court on

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 1

September 25, 2018, seeking reversal of the ALJ's decision and a remand for an award of benefits. Dkt. 1, Dkt. 8, pp. 11-12.

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill,* 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.,* 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers,* 846 F.2d at 576).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

## ISSUES FOR REVEW

1. Did the ALJ err in evaluating the opinion of Erum Khaleeq, M.D.?
2. Did the ALJ err in evaluating the opinions of Peter Weiss, Ph.D. and Janis Lewis, Ph.D.?
3. Did the ALJ err in her evaluation of Plaintiff's subjective allegations?

## DISCUSSION

The Commissioner employs a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The ALJ assesses the claimant's residual functional capacity ("RFC") to determine at step five whether he or she can make an adjustment to other work. *Kennedy v. Colvin,* 738 F.3d 1172, 1175 (9th Cir. 2013). It is the ALJ's burden to

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 2

show the claimant can perform jobs that exist "in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); 20 C.F.R. §§ 404.1520(e), 416.920(e).

In this case, the ALJ determined that Plaintiff had the residual functional capacity to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b). He is able to occasionally reach overhead bilaterally. He is able to perform simple routine tasks, which is defined as no greater than reasoning level 2. He is able to perform work that does not require public contact. He is able to perform work that does not require more than occasional superficial contact with co-workers and that does not require team tasks.

AR 15. Based on the vocational expert's testimony that an individual with the same RFC as plaintiff—and the same age, education, and work experience—could perform jobs existing in significant numbers in the national economy, the ALJ determined that were a significant number of light, unskilled jobs Plaintiff could perform at step five of the sequential evaluation. AR 26-27, 86-87.

I. The ALJ's Evaluation of Dr. Khaleeq's Opinion

Plaintiff contends that the ALJ erred in her evaluation of the opinion of Dr. Erum Khaleeq. Dkt. 3, pp. 3-6. Dr. Khaleeq examined Plaintiff in July 2014 at the request of the Disability Determination Service. AR 498-502. As part of the evaluation, Dr. Khaleeq conducted a clinical interview and a mental status examination. AR 498-502. Based on this evaluation, Dr. Khaleeq opined that Plaintiff could perform simple and repetitive tasks but noted that Plaintiff might get distracted by detailed and complex tasks. AR 501. Dr. Khaleeq further opined that Plaintiff would have difficulty accepting instructions from supervisors and interacting with co-workers and the public due to his history of being fired multiple times from different jobs. AR 501.

Dr. Khaleeq also noted that Plaintiff might take some time to perform work tasks on a consistent basis, and that he might have difficulty maintaining workplace attendance and completing a normal workday/workweek due to interruptions from his mood symptoms. AR 501. Dr. Khaleeq added that Plaintiff's disheveled appearance would render him unpresentable in a job setting and noted that the usual stressors encountered in the workplace could further aggravate his psychiatric condition. AR 501-502.

The ALJ assigned partial weight to Dr. Khaleeq's opinion. In evaluating Dr. Khaleeq's opinion, the ALJ reasoned that:

> Dr. Khaleeq is knowledgeable with the Social Security Administration disability program and had a chance to examine the claimant in forming an opinion. His opinion regarding the claimant's mental functioning is generally consistent with the overall medical evidence of record, including the claimant's presentation and performance during the examination, as well as medical evidence indicating that his symptoms improved and stabilized with appropriate treatment. However, his opinion regarding the claimant's inability to sustain full-time competitive employment is not in line with the record as a whole, including his ability to manage activities of daily living independently, draw, tinker in the garage, and play video games.

AR 24.

Plaintiff argues that the ALJ did not specifically reject Dr. Khaleeq's assessment that Plaintiff may have difficulties accepting instructions from supervisors and that he may take some time to perform work activities on a consistent basis. Dkt. 8, p. 4. Plaintiff further argues that the ALJ erred by rejecting Dr. Khaleeq's opinion that Plaintiff might have difficulty maintaining workplace attendance and completing a normal workday/workweek due to interruptions from his mood symptoms, reasoning that the ALJ provided "a conclusion and not an explanation." Dkt. 8, p. 5. Specifically, Plaintiff contends that there is "nothing inherent" in the activities cited by the ALJ in rejecting Dr. Khaleeq's opinion that "would show an individual would not have difficulty with attendance or completing a normal workday/workweek." Dkt. 8, p. 5.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*

The ALJ did not offer specific reasons for not incorporating into the RFC restrictions corresponding to each of the work-related social limitations assessed by Dr. Khaleeq. An ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

Here, the ALJ erred in failing to discuss Dr. Khaleeq's opinion concerning Plaintiff's specific work-related mental limitations – this was significant probative evidence. *See* Social Security Ruling (SSR) 96-8p (the RFC assessment must address non-exertional capacities such as mental abilities (e.g. understanding and remembering instructions and responding appropriately to supervision)).

Defendant concedes that the ALJ did not specifically discuss these mental limitations but contends that the ALJ included work-related social limitations in the RFC that "captured the overall opinion" of Dr. Khaleeq. Dkt. 9, p. 4. Defendant further argues that Plaintiff's response to supervisory criticism is one factor among many that may be considered in evaluating social functioning. Dkt. 9, p. 7. Defendant essentially argues that the ALJ's failure to explain why he

was not adopting certain work-related mental limitations constitutes harmless error, since the existing RFC is sufficient to accommodate Plaintiff's mental impairments.

The ALJ's error is not harmless. Plaintiff's primary allegation (with respect to his mental impairments) is that he cannot function in the workplace due to difficulties getting along with others, paranoia, and anger management issues. During the hearing, Plaintiff testified that he rarely leaves his home due to paranoia and anxiety attacks. AR 64.

Plaintiff further testified that when he is around people he gets paranoid and antsy and feels like he wants to hit somebody. AR 64. In his function report, Plaintiff again stated that he gets extremely agitated when he is around people and cannot stop himself from having thoughts about harming them. AR 331. During a psychological evaluation, Plaintiff stated that he believes he is constantly being watched and followed. AR 603. Plaintiff asserted that he has difficulty handling changes in routine, and has problems managing stress. AR 337.

In a third-party function report, Plaintiff's grandmother stated that Plaintiff has a "very big problem" getting along with other people, he is selfish, and he has difficulty maintaining friendships. AR 323. Plaintiff's grandmother stated that Plaintiff cannot get along with anyone, has a "rotten attitude", and his social difficulties were becoming worse with age. AR 328, 330. Plaintiff's grandmother stated that Plaintiff becomes "really really upset" whenever he is asked to do any work around the house. AR 325-236. Plaintiff's grandmother also noted that Plaintiff does not handle change well, and that if Plaintiff gets scared he "freaks out" and "goes half crazy." AR 329.

In a third-party function report, Plaintiff's aunt Vickey McMillan discussed the history of mental illness in Plaintiff's family. AR 397-399. In another third-party function report Plaintiff's uncle Gary Elms discussed Plaintiff's traumatic upbringing and noted that Plaintiff was "mean

and heartless" from an early age. AR 401. Mr. Elms noted that Plaintiff had anger issues from an early age, and that he would "constantly" get into trouble at school. AR 402. Mr. Elms discussed Plaintiff's criminal history and observed that Plaintiff's behavior was "worse than ever" when he was released from prison. AR 402.

Plaintiff stated that he had difficulty getting along with authority figures and he does not like people who are not as intelligent as him telling him what to do. AR 336. Plaintiff's grandmother also said that he no respect for authority figures. AR 329. Plaintiff further stated that he gets angry because "people are so freaking dumb" and gets irritated when he asks people questions because he thinks they "sound so stupid." AR 498. Plaintiff stated that he had been fired "many times" for getting into physical altercations with his co-workers. AR 498.

Plaintiff stated that he had been fired from every job he has ever had because of his difficulties getting along with people. AR 337, 498. Plaintiff's grandmother also noted that Plaintiff had difficulty keeping a job. AR 323. Mr. Elms also noted that Plaintiff was fired from every job he had due to his difficulties getting along with others. AR 402.

Plaintiff stated that he does not trust anyone, and that other people are "shady" and out to get him. AR 336. Plaintiff's grandmother also commented on Plaintiff's paranoid tendencies, noting that Plaintiff talks to himself and believes that everyone is out to get him. AR 324. Plaintiff's uncle also noted that Plaintiff talks to himself, experiences auditory hallucinations, feels that everyone is out to get him, and often "lashes out like a crazy person." AR 402-403.

Given the extreme nature of Plaintiff's allegations concerning paranoia, contempt for authority figures and the difficulties he has getting along with others, the ALJ's failure to explain why she was not including an RFC limitation concerning Plaintiff's difficulties accepting

instructions from supervisors constitutes harmful error. Had the ALJ properly evaluated Dr. Khaleeq's opinion, the RFC may have included additional limitations.

Defendant's argument that the mental limitations in the existing RFC are sufficient to accommodate all Plaintiff's mental impairments is not supported by the record. During the ALJ's hearing, the ALJ and Plaintiff's attorney posed questions to the vocational expert about the impact of additional physical limitations, chronic absenteeism, and time spent off task on Plaintiff's ability to perform work at step five of the sequential evaluation. AR 83-89. The ALJ was not asked whether the inclusion an additional limitation consistent with Plaintiff's allegations concerning his contempt for authority figures and violent behavior at work would further erode the base of available unskilled jobs at step five.

Elsewhere in the decision, in the context of evaluating Plaintiff's subjective allegations, the ALJ cast doubt on Plaintiff's testimony that he had been fired from every job he'd ever had due to his inability to get along with others, noting that Plaintiff had worked at one job for three years before being fired to a failure to comply with company hygiene policy. AR 21-22. And, Plaintiff's grandmother stated that he had been fired from another job for falling asleep, not because of difficulties getting along with others. AR 321, 498. The ALJ also found that Plaintiff's criminal convictions rather than his impairments were the primary impediment to Plaintiff's vocational success. AR 16, 19-21.

The ALJ's assessment of Plaintiff's subjective allegations might explain her decision not to include more serious work-related social limitations in the RFC. However, drawing a connection between the ALJ's reasoning concerning Plaintiff's credibility and her evaluation of Dr. Khaleeq's opinion would constitute an improper post-hoc rationalization. The Court may draw reasonable inferences from the ALJ's opinion but cannot consider post hoc rationalizations

about what the ALJ considered. *See Magallanes v. Bowen*, 881 F.2d 747, 775 (9th Cir. 1989). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (citing *Chenery Corp*, 332 U.S. at 196).

Further, the ALJ's finding that Plaintiff could sustain full-time employment because he could manage activities of daily living independently – e.g., he could draw, tinker in the garage, and play video games -- is not supported by substantial evidence. Plaintiff's primary allegation with respect to his mental health impairments is that he has been unable to sustain full time employment because of his extreme difficulties engaging with co-workers and supervisors in a work setting. Plaintiff's ability to engage in solitary pursuits such as drawing and tinkering in the garage does not support a conclusion that Plaintiff would be able to successfully interact with others in the workplace.

The ALJ's analysis concerning the transferability of the skills acquired from playing video games, AR 22, to the world of work is highly speculative. Plaintiff did testify that he was "the best" at playing video games. AR 335. However, in addition to the social limitations discussed above, Plaintiff also testified that he rarely leaves the house, and his grandmother stated that he sleeps a lot. AR 64, 324.

Persuasive authority from other jurisdictions suggests that playing certain kinds of video games may require a degree of concentration. *See e.g., Hutchins v. Berryhill*, No. 18-10182,

2019 WL 135955 at *6 (E.D. Michigan, March 26, 2019) (Citing physician opinion that playing video games requires a degree of concentration), *Baty v. Barnhart*, 512 F. Supp. 2d 881, 888 (W.D. Texas, June 13, 2007) (Citing medical expert testimony that an ability to play video games for upwards of eight hours suggests persistence and an ability to concentrate). However, the ALJ's conclusion that Plaintiff's enjoyment of video games means that he has acquired social skills and the ability to communicate effectively with others in stressful situations is questionable. *See Franz v. Colvin*, 91. F. Supp. 3d 1200, 1207-1208 (D. Oregon, Feb. 11, 2015) (finding that a Social Security claimant's excessive sleeping and video game playing supported his allegations of social withdrawal). As such, the ALJ has not provided specific and legitimate reasons that are supported by substantial evidence for not adopting the social limitations assessed by Dr. Khaleeq.

II.     The ALJ's Evaluation of the Opinions of Dr. Weiss and Dr. Lewis

Plaintiff next contends that the ALJ erred in evaluating the opinions of Peter Weiss, Ph.D., and Janis Lewis, Ph.D. Dkt. 8, pp. 6-8. Plaintiff argues that the ALJ did not provide an adequate rationale for rejecting the marked and severe mental limitations assessed by Dr. Weiss. Dkt. 8, p. 7.

Dr. Weiss conducted a psychological/psychiatric examination of Plaintiff in April 2017. AR 603-607. After conducting a clinical interview, Dr. Weiss assessed Plaintiff as having a range of moderate, marked, and severe limitations in work-related mental functioning. Specifically, Dr. Weiss assessed Plaintiff as having marked limitations in communicating and performing effectively in a work setting and maintaining appropriate behavior in a work setting. AR 605. Dr. Weiss further assessed Plaintiff as having severe limitations in completing a normal work day and work week without interruptions from psychologically based symptoms and in

setting realistic goals and planning independently. AR 605. In May 2017, Dr. Lewis performed a review of the medical evidence, confirming Dr. Weiss' assessment, and further assessing Plaintiff as having severe limitations in performing activities within a schedule, maintaining regular attendance, and being punctual within normal tolerances. AR 609.

The ALJ assigned partial weight to the opinions of Dr. Weiss and Dr. Lewis, reasoning that:

> Dr. Weiss had a chance to examine the claimant in forming an opinion. His opinion regarding [Plaintiff's] mental limitations is somewhat consistent with the overall medical evidence of record, including [Plaintiff's] performances during psychological evaluations and treatment notes indicating that [Plaintiff's] mental health symptoms improved and stabilized with appropriate treatment. However, his opinion regarding [Plaintiff's] marked and severe limitations are not consistent with [Plaintiff's] ability to manage activities of daily living independently, draw, tinker in the garage, and play video games. The undersigned gives Dr. Weiss's opinion partial weight.

AR 25. The ALJ assigned partial weight to Dr. Lewis' opinion regarding Plaintiff's mental limitations for the same reasons but did not acknowledge that Dr. Lewis assessed additional severe work-related mental limitations. AR 25. The explanation provided by the ALJ for assigning partial weight to the opinions of Dr. Weiss and Dr. Lewis is identical to the rationale she provided for giving partial weight to Dr. Khaleeq's opinion. For the same reasons discussed above, the ALJ's rationale for not properly evaluating the limitations contained in these opinions is not accompanied by specific and legitimate reasons that are supported by substantial evidence.

III. The ALJ's Evaluation of Plaintiff's Subjective Allegations

Plaintiff also asserts that the ALJ failed to provide specific, cogent reasons for rejecting Plaintiff's subjective symptom testimony. Dkt. 8, pp. 8-11. Because the substance of Plaintiff's claim has already been addressed in the context of reviewing the ALJ's evaluation of the medical opinion evidence, the Court will not address it again here. Instead, the Court directs the ALJ to reweigh Plaintiff's subjective symptom testimony as necessary on remand.

## IV. Remand for Further Proceedings

Plaintiff argues that this matter should be remanded with a direction to award benefits. Dkt. 8, p. 11. The Court has discretion to remand a case for additional evidence and findings -- or the Court may remand for award benefits. *Trevizo v. Berryhill,* 871 F.3d 664, 682 (9th Cir. 2017). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels v. Berryhill,* 874 F.3d 648, 668 (9th Cir. 2017).

Benefits should be awarded where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Trevizo,* 871 F.3d at 682-83 (quoting *Garrison v. Colvin,* 759 F.3d 995, 1020 (9th Cir. 2014)); *See also, Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (amended January 25, 2018) (even if the Court finds all three parts of the test for awarding benefits are met, the Court retains discretion to remand for further proceedings if, considering the record as a whole, there are reasons to have serious doubt as to whether the claimant is disabled.)

The Court has determined, as discussed above, that on remand the ALJ must re-evaluate the medical opinion evidence and then re-evaluate the Plaintiff's symptom testimony as well as the RFC and whether there is other work that Plaintiff would be able perform despite his condition(s). Therefore, there are outstanding issues which must be resolved and remand for further proceedings is appropriate.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

Dated this 12th day of September, 2019.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge